462 F.2d 1002
 4 Fair Empl.Prac.Cas. 946, 4 Empl. Prac. Dec. P 7882
Mary Lou SCHAEFFER, Plaintiff-Appellant,
v.
SAN DIEGO YELLOW CABS, INC., etc., et al., Defendants-Appellees.
Mary Lou SCHAEFFER, Plaintiff-Appellee,
v.
SAN DIEGO YELLOW CABS, INC., etc., et al., Defendants,
Division of Industrial Welfare & Industrial
Welfare Commission of the State of
California, Intervenor
Defendant-Appellant.
 Nos. 71-1442, 71-1244.
 United States Court of Appeals,
 Ninth Circuit.
 June 20, 1972.
 
 Blanche Bersche, Deputy Atty. Gen., Evelle J. Younger, Atty. Gen., San Francisco, Cal., James K. Smith (argued), Josiah L. Neeper, of Gray, Cary, Ames & Frye, San Diego, Cal., Bodle, Fogel, Jubler & Reinhart, Los Angeles, Cal., for appellant.
 Charles L. Reischel (argued), Julia P. Cooper, John de J. Pemberton, Deputy Gen. Counsel, Stanley P. Hebert, Gen. Counsel, Washington, D. C., amicus curiae for appellant.
 Anthony Glassman (argued), of Miller, Glassman & Browning, Beverly Hills, Cal., for San Diego Yellow Cabs, Inc. and others.
 Before BARNES and WRIGHT, Circuit Judges, and BYRNE, District Judge.*
 BARNES, Circuit Judge:
 
 
 1
 Plaintiff Mary Lou Schaeffer brought this action against her employer, San Diego Yellow Cabs, Inc. (hereinafter the Company), under the Equal Employment Opportunities Act, Title VII of the 1964 Civil Rights Act, 42 U.S.C. Sec. 2000e et seq. Plaintiff alleged that the Company had unlawfully discriminated between the sexes by refusing to permit her to work as many hours per day as male employees were permitted to work.
 
 
 2
 The jurisdiction of the lower court was based upon 28 U.S.C. Sec. 1343 and 42 U.S.C. Sec. 2000e-5(f). Jurisdiction in this court exists under 28 U.S.C. Sec. 1291.
 
 
 3
 Plaintiff Schaeffer was employed by the defendant Company as a taxicab driver on March 18, 1966. In October of 1966, Schaeffer requested that she be permitted to work 9-hour days. The Company refused as, at that time, it did not permit any of its female drivers to work more than 8-hour days, though male drivers were allowed to work 9-hour days. This limitation on female drivers was in compliance with Section 1350 of the California Labor Code, and Transportation Order No. 9-68 of the California Industrial Welfare Commission, 8 Cal.Admin. Code Sec. 11460.
 
 
 4
 In January of 1967, Schaeffer filed charges of discrimination with the Equal Employment Opportunities Commission (hereinafter the Commission or E.E.O.C.). Her charge was rejected as the Commission concluded that the California statutes were valid. In January of 1968, she filed another charge with the Commission on the same grounds. While this second charge was pending, and on November 22, 1968, the case of Rosenfeld v. Southern Pacific Company, 293 F.Supp. 1219 (C.D.Cal.1968) was decided. Rosenfeld dealt with sex discrimination in employment, and held that various provisions of the California Labor Code, including Sec. 1350, were invalid as conflicting with the Equal Employment Opportunities Act. On January 22, 1969, the Commission reversed its previous ruling and found that there was reasonable cause to believe that the Company was committing unlawful employment practices.
 
 
 5
 In September of 1969, Schaeffer received notice from the Commission that attempts to secure voluntary compliance had failed, and that she could institute a civil action. On October 7, 1969, the Company announced to its female drivers that they would be allowed to work full 9-hour days like the male drivers.
 
 
 6
 On the same day, plaintiff Schaeffer filed her complaint. She named as defendants the Company and her union, the Transportation and Allied Workers of California.[1] She sought in her complaint, one, a declaration that Sections 1350 and 1350.5 of the California Labor Code, and Transportation Order No. 9-68 of the California Industrial Welfare Commission were invalid; two, an injunction directing the Company to allow her to work 9-hour days; three, damages for the amount of pay she would have earned if she had been permitted to work 9-hour days since October 15, 1966; and four, attorney's fees and costs.
 
 
 7
 Following a trial, the court below entered its judgment declaring the California "hours" laws and regulations invalid, and awarding plaintiff $600 attorney's fees. The court denied damages for the lost work time, and refused to issue an injunction in light of the Company's change in policy. Schaeffer filed appeal No. 71-1442, challenging the refusal to award damages and the allowance of only $600 in attorney's fees. The Commission was permitted to file an amicus curiae brief.
 
 
 8
 The Division of Industrial Welfare and the Industrial Welfare Commission of the State of California (hereinafter California) then sought to intervene as defendants in order to attack the court's rulings on the validity of the statutes and regulations. Eventually, the court granted the motion to intervene, but denied the request for relief. California then filed appeal No. 71-1244.
 
 I. Appeal No. 71-1244
 
 9
 After judgment was entered by the district court and the appeals were filed, this court on June 1, 1971, handed down its opinion in Rosenfeld v. Southern Pacific Company, 444 F.2d 1219 (9th Cir. 1971). In Rosenfeld, we held that, under the provisions of 42 U.S.C. Sec. 2000e-7, state legislation could not justify discriminatory treatment of women in employment practices which conflicted with federal law. The State of California decided not to appeal this decision to the United States Supreme Court. Instead, it announced on June 24, 1971, that it would no longer enforce the maximum hours provisions of Sections 1350 and 1350.5.
 
 
 10
 Consequently, the State of California informed this court that in this case it no longer desired to press its claim that those sections of the Labor Code did not conflict with Title VII of the Civil Rights Act of 1964, and withdrew any claim the state statutes are valid. However, California wishes to continue its attack on the jurisdiction of the district court to declare Sections 1350 and 1350.5 invalid. California argues that no case or controversy existed in the district court on this issue as neither the Company nor the union, the two original defendants, were maintaining the validity of those statutes. It was only after the judgment was entered by the district court, and California intervened, that any arguments in defense of the statutes were presented.
 
 
 11
 We decline to reach the issue urged by California on appeal. By conceding that the state maximum hours statutes in question conflict with federal law, California has effectively mooted the issue of the district court's jurisdiction to rule on the validity of these statutes.
 
 
 12
 While plaintiff Schaeffer is named as appellee in appeal No. 71-1244, she no longer is directly interested in the question of the jurisdiction of the court below to determine the validity of the California statutes. No one challenges the jurisdiction of that court to rule upon Schaeffer's claim for damages. As the invalidity of the California statutes is now admitted, any action by this court, either affirming or reversing the district court's jurisdiction to consider the issue of the validity of the California statutes, cannot affect Schaeffer's appeal on the issues of damages.
 
 
 13
 California's sole purpose in pursuing this appeal is to obtain a ruling on the scope of a district court's jurisdiction to declare a state statute invalid when the state is not joined as a party. If we made such a ruling, it would be merely an advisory opinion, for no "live" controversy exists between California and Schaeffer.
 
 
 14
 "A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it. Local No. 8-6, Oil, Chemical and Atomic Workers, etc. v. Missouri, 361 U.S. 363, 367, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960)." Rosenfeld v. Southern Pacific Company, 444 F.2d at 1221.
 
 
 15
 Therefore, we dismiss appeal No. 71-1244 on the grounds that it does not present a case or controversy between the parties to this action.II. Appeal No. 71-1442
 
 A. BACK PAY
 
 16
 Plaintiff Schaeffer contends that under Sec. 706(g) of Title VII of the Civil Rights Act of 1964,[2] she is entitled to back pay for the hour per day she was prevented from working by her employer. The amicus brief filed by the Commission deals almost exclusively with material supporting Schaeffer's damages claim.
 
 
 17
 Liability under Sec. 706(g) only attaches to an employer who intentionally engages in an unlawful employment practice. We agree with the Fifth, Seventh, and Tenth Circuits, and adopt a broad interpretation of the term "intentionally" to include all employment practices engaged in deliberately rather than accidentally. Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980, 996 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S. Ct. 926, 25 L.Ed.2d 100 (1970); Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1201 (7th Cir. 1971), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245, 250 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971); see Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The practice of the Company in allowing men to work longer than women comes within this interpretation of Sec. 706(g). The fact that the Company may have been relying on a state statute does not make their actions any less of a violation under Sec. 706(g). LeBlanc v. Southern Bell, 333 F.Supp. 602 (E.D.La.1971).
 
 
 18
 However, the conclusion that the company violated Sec. 706(g) does not automatically entitle Schaeffer to the damages she demands. A court may enjoin and may award damages, but should only order affirmative action, such as back pay, when such relief is "appropriate". In the case of damages of this nature, a court must balance the various equities between the parties and decide upon a result which is consistent with the purposes of the Equal Employment Opportunities Act, and the fundamental concepts of fairness.
 
 
 19
 The Company argues that reliance on a state statute which the employer believes in good faith to be enforceable should serve as a complete defense to damages for back pay. LeBlanc v. Southern Bell, supra; Kober v. Westinghouse Electric Corp., 325 F.Supp. 467 (W.D.Pa.1971); Ridinger v. General Motors Corporation, 325 F.Supp. 1089 (S.D.Ohio 1971).
 
 
 20
 Plaintiff and the Commission respond that the purpose of the Equal Employment Opportunities Act is better served by showing preference to the innocent employee over the innocent employer. They argue that to permit the defense claimed by the Company would discourage employees from attacking unlawful practices involving state statutes by removing an important financial incentive. The Commission cites a number of cases under the Fair Labor Standards Act and the National Labor Relations Acts which hold that lack of intent to violate federal labor statutes and good faith reliance on orders of administrative agencies are not defenses to claims for back pay. NLRB v. J. H. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969); Hodgson v. American Can Co., 440 F.2d 916 (8th Cir. 1971); Shultz v. Mistletoe Express Service, Inc., 434 F.2d 1267 (10th Cir. 1970); American Machinery Corp. v. NLRB, 424 F.2d 1321 (5th Cir. 1970); Laidlaw Corp. v. NLRB, 414 F.2d 99 (7th Cir. 1969); Wirtz v. Malthor, Inc., 391 F.2d 1 (9th Cir. 1968).
 
 
 21
 Rather than drawing any hard and fast rule concerning the defense of good faith reliance on a state statute, we believe that in each case the merits of the plaintiff's claim and the public policy behind it must be balanced against the hardship on a good-faith employer.
 
 
 22
 When Schaeffer first requested permission to work 9-hour days in October of 1966, the Company would have been required to violate a state statute in order to grant her request. Under the generally prevailing conception of the scope of Title VII, it was reasonable for the Company to assume that the state statutes involved were valid, and could be successfully enforced. The Commission's rejection of Schaeffer's charges in 1967 supported the Company's actions.[3] When Schaeffer filed her second charge in January of 1968, the basic situation was the same.
 
 
 23
 However, on November 22, 1968, the district court issued its opinion in Rosenfeld v. Southern Pacific Company, 293 F.Supp. 1219 (C.D.Cal.1968). The Company admits that it knew of this case shortly after it was decided. In January of 1969, the Commission reversed its position and concluded that there was probable cause to believe that the Company was engaged in an unlawful employment practice.
 
 
 24
 We believe that by the time the Company had notice of both the Rosenfeld decision in the district court and the Commission's reversal in policy, reliance upon the state statute in continuing to deny Schaeffer the right to work 9-hour days could no longer be considered to be in good faith and serve as a defense against the damages claim.[4] We conclude, therefore, that Schaeffer is entitled to receive back pay for the extra hour per day from the date when the Company had knowledge of both the Rosenfeld case and the Commission's decision in favor of Schaeffer (i. e., on some undetermined date subsequent to 1/22/69, to and including 10/7/69, the date the company allowed 9-hour daily employment for women).
 
 
 25
 We reject the argument that an employer should not be held for claims of back pay until a "final" court decision, such as our decision in Rosenfeld in June of 1971. It is unfair to force an innocent employee to forego his rights under law while litigation drags through the courts (which, in the Rosenfeld case, took nearly three years).
 
 
 26
 We do not understand that our earlier statements in Rosenfeld's penultimate paragraph (concerning prospective application of that decision) to bar the result we reach in this case. 444 F.2d at 1227. We are not applying the Rosenfeld decision retroactively. The Company was in violation of federal law for a certain time prior to the date this suit was filed. Rosenfeld did not intend to automatically forgive all violations of Federal law that occurred prior to that decision. Plaintiff in this case had filed her suit in the district court well before the decision in Rosenfeld by this court. We stated in Rosenfeld that our decision would not necessarily affect actions pending prior to our decision. 444 F.2d at 1227.
 
 
 27
 As stated, we feel that a proper balance between the Company and Schaeffer would be had by holding the Company liable for damages from the time it had notice of the district court's decision in Rosenfeld and the Commission's reversal in position, up to and including 10/7/69. We therefore remand this case to the district court so that it may reopen the matter, take testimony, and calculate the amount of damages.
 
 B. ATTORNEY'S FEES
 
 28
 Section 706(k) of Title VII grants a district court discretion to allow the prevailing party reasonable attorney's fees. The court below awarded Schaeffer $600 in attorney's fees, though an itemized claim for $2,220 was submitted. The court stated no reasons for allowing less than one-third of the claimed fees, but it was not required to do so.
 
 
 29
 The allowance of reasonable fees in civil rights cases is an important feature of the enforcement provisions of that Act. See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The amount of the award should not be such that it would discourage others from seeking to attack discriminatory practices. However, the amount of the award should also be proportionate to the extent to which the plaintiff prevails in the suit. We believe that the district court should reconsider the award of attorney's fees in light of our decision that plaintiff is entitled to a small portion of the back pay claimed by her. We do not intend to express any opinion whether the amount of fees to be awarded should or should not be enlarged over the amount heretofore allowed. We recognize a large discretion on such matters rests with the trial court, guided by the usual principles of how such matters are determined.[5]
 
 
 30
 Appeal No. 71-1442 is reversed and remanded for further proceedings suggested herein.
 
 
 31
 Appeal No. 71-1244 is dismissed.
 
 WILLIAM M. BYRNE (dissenting):
 
 32
 I respectfully dissent from that part of the opinion in Appeal No. 71-1442 relating to the allowance of damages.
 
 
 33
 This controversy should be added to the ranks of those cases which recognize that employers acting pursuant to obligatory state laws cannot be deemed to have intentionally violated Section 706(g) of Title VII. LeBlanc v. Southern Bell, 333 F.Supp. 602 (E.D.La. 1971); Kober v. Westinghouse Electric Corp., 325 F.Supp. 467 (W.D.Pa.1971); Ridinger v. General Motors Corporation, 325 F.Supp. 1089 (S.D.Ohio 1971); Richards v. Griffith Rubber Mills, 300 F. Supp. 338 (D.Or.1969).
 
 
 34
 The fact that Yellow Cab continued to rely on state law after the District Court ruling in Rosenfeld does not alter its position. This court, in affirming Judge Ferguson's ruling, acknowledged that such lower court decisions do not, ipso facto, relieve employers of their fealty to state law:
 
 
 35
 "Moreover, in view of the California statutes referred to above, the conclusion that the company engaged in 'discrimination' in refusing to assign plaintiff to the Thermal position carries with it no invidious connotation. Prior to a judicial determination such as evidenced by this opinion, an employer can hardly be faulted for following the explicit provisions of applicable state law." (emphasis added)
 
 
 36
 Rosenfeld v. Southern Pacific Co., 444 F.2d at 1227.
 
 
 37
 Here, the district court found the acts of sex discrimination committed by the Yellow Cab Company were the product of good faith reliance upon the laws of California and not intentional commission of unlawful employment practices. Accordingly, the court found that damages for loss of wages for the period of time when the restriction operated was "not authorized".
 
 
 38
 The majority adopts the argument of the plaintiff that if there are two innocent parties to a controversy, preference should be shown to the innocent employee over the innocent employer.
 
 
 39
 If both are innocent, why should either be penalized?
 
 
 40
 I would affirm.
 
 
 
 *
 The Honorable William M. Byrne, Sr., United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 The union's motion for summary judgment was granted, and it is not a party in either appeal
 
 
 [2]
 "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice)." 42 U.S.C. Sec. 2000e-5(g)
 
 
 [3]
 Under the regulations promulgated by the Equal Employment Opportunities Commission and in effect in 1965-1969, the state statutes involved here would have been considered valid. 29 C.F.R. Sec. 1604.1(b) and (c), 30 Fed.Reg. 14927 (Dec. 2, 1965). Although the Commission reversed its thinking in this matter about 1968, it was not until mid-1969 that the regulations were amended. 29 C.F.R. Sec. 1604.1(b), 34 Fed.Reg. 13368 (Aug. 11, 1969)
 
 
 [4]
 We reject the idea advanced by the Commission that the Company should be held responsible for failing to file a declaratory judgment action against the state to obtain a ruling on the validity of the statutes. A company in such a case cannot always, and perhaps never can, be expected to press a claim on behalf of its employees with sufficient fervor to insure an adequate presentation of the merits of the claim before the court
 
 
 [5]
 Although no attorneys' fees were requested by appellant Schaeffer on this appeal, the Commission draws our attention (by letter subsequent to argument) to the case of Malone v. North American Rockwell Corporation, 457 F.2d 779 (decided by this court on March 23, 1972). The statute (42 U.S.C. Sec. 2000e-5(k)) is available only to the appellant Schaeffer and is couched in permissive language. Under the particular circumstances of this case, we award no attorneys' fees, as costs, on this appeal. Appellant is entitled to her ordinary costs, as the prevailing party